FILED
2021 SEP 17 PM 4:24
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SAARI, et al.,<br><br>      Plaintiffs,<br>v.<br><br>SUBZERO ENGINEERING, et al.,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING [14] DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Case No. 2:20-cv-00849-CMR<br><br>Magistrate Judge Cecilia M. Romero |

  All parties in this case have consented to Magistrate Judge Cecilia M. Romero conducting all proceedings, including entry of final judgment (ECF 21). 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Plaintiffs Robert A. Saari (Plaintiff or Saari), Christian Connor, Jordan Pietak, Enrique Miranda, and Rory Ricketts (collectively, Plaintiffs) each assert individual claims for overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1) (ECF 2). Before the court is Defendants Subzero Engineering Inc. (Subzero) and Senneca Holdings Inc.'s (Senneca) (collectively, Defendants) Motion for Partial Summary Judgment (Motion) (ECF 14) regarding Saari's claim. Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter based on the written memoranda. *See* DUCivR 7-1(f). For the reasons set forth below, the court will GRANT the Motion.

      **I.  UNDISPUTED MATERIAL FACTS[1]**

  Saari began working for Subzero in June 2013 as an installer, then later became a Lead Installer. After Saari ended his employment in February 2020, he alleged he was not reimbursed

---

[1] The following facts are either undisputed or portrayed in the light most favorable to Saari. Unless otherwise noted, the facts are drawn from the parties' memoranda and exhibits thereto (ECF 14; ECF 32).

for certain expenses.  Defendants and Saari negotiated a settlement whereby Saari was paid $5,027.59 "in exchange for a signed general release" as set forth in the "General Release Agreement" (Agreement) (Def's Ex. A (ECF 15-1), at 1).  The Agreement contains a provision entitled "Release of Claims," which states that Saari released and forever discharged Defendants:

> from any and all manner of claims, demands, actions, causes of action, administrative claims, liability, damages, claims for punitive or liquidated damages, claims for attorney's fees, costs and disbursements, individual or class action claims, or demands of any kind whatsoever . . . whether known or unknown, in law or equity, contract or tort, arising out of or in connection with your employment with the Company, or the termination of that employment, or otherwise, and however originating or existing, except for those allowed by law, from the beginning of time through the date of your signing this Agreement.

(*Id.* at 2).  This provision further states that "[t]his release includes . . . any claims you may have for, bonuses, commissions, penalties, deferred compensation, vacation, sick, and/or paid time off pay, separate pay and/or benefits[.]" (*Id.*).

The Agreement includes the following terms in reference to Saari's wages and payments owed to him by Defendants:

> [Y]ou have received all wages and compensation owed to you by virtue of your employment with the Company or termination thereof.
> …
> You are not eligible for any other payments or benefits by virtue of your employment with the Company or termination thereof except for those expressly described in this Agreement.

(*Id.* at 1).  The Agreement includes the following acknowledgments by Saari regarding the terms of the Agreement: "I understand and agree to all the terms of the General Release.  I am knowingly and voluntarily releasing my claims against the Company[.]" (*Id.* at 4).  The Agreement contains a provision informing Saari of his right to consult with an attorney and provided 21 calendar days to consider the terms of the Agreement (*Id.* at 3–4).  Saari signed the Agreement on September 13, 2020 and thereafter cashed his settlement check.

## II.     SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a).  In making this determination, courts "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County*, 546 F.3d 1299, 1306 (10th Cir. 2008)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

## III.     DISCUSSION

Defendants filed the instant Motion seeking summary judgment on Saari's claim for overtime wages arguing Saari released all claims against Defendants by signing the Agreement (ECF 14 at 2).  Saari argues that he did not release his FLSA claims as part of the Agreement (ECF 32 at 7).  Defendants respond that Saari failed to provide evidence of a genuine issue of material fact or controlling case law in support of his arguments (ECF 33 at 2–4).  The issue before the court is whether the Agreement bars Saari's claim.

### A.     The Agreement is binding and bars Saari's claim.

Saari argues he did not release his claim because he did not negotiate overtime wages as part of the Agreement (ECF 32 at 7–8).  In assessing whether a release is binding, courts consider the totality of the circumstances, including:

> (1) the clarity and specificity of the release language; (2) [his] education and business experience; (3) the amount of time [he] had for deliberation about the release before signing it; (4) whether [he] knew or should have known [his] rights upon execution of the release; (5) whether [he] was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by [him] exceeds the benefits to which [he] was already entitled by contract or law.

*VanLandingham v. Grand Junction Regional Airport Authority*, 603 F. App'x 657, 660 (10th Cir. 2015) (quoting *Torrez v. Pub. Serv. Co. of N.M., Inc.*, 908 F.2d 687, 689–90 (10th Cir. 1990)).

Here, nearly all the factors weigh in favor of upholding the release provision in the Agreement. With regard to the first factor, the undisputed facts show that the Agreement contains a provision clearly releasing all claims against Defendants. Though the Agreement does not specifically reference FLSA claims, the plain language of the Agreement unequivocally bars "any and all manner of claims . . . arising out of or in connection with [Saari's] employment[,]" which would encompass his claim for overtime wages. Saari failed to provide any evidence regarding the second factor. As to the third and fifth factors, the undisputed facts show that the Agreement informed Saari of his right to seek counsel and provided a period of 21 days to deliberate about the Agreement before signing it. Again, Saari did not provide any evidence regarding whether he received the benefit of counsel or used the time given to deliberate. The only evidence provided relating to the fourth factor is the Agreement itself, which includes an acknowledgement signed by Saari stating, "I understand and agree to all of the terms of the General Release." The court finds this is sufficient to show that Saari should have known his rights upon execution of the Agreement.

Relating to the sixth factor, Saari provided an Affidavit in which he attests that the Agreement "was negotiated solely on the assumption we were resolving the reimbursement issue"; he did not "intend these negotiations to include overtime claims under the [FLSA]"; and

4

he did not "specifically negotiate with Subzero regarding [his] overtime claim[.]" (Pl's Ex. 1 (ECF 32-1), at 5). The court finds these facts immaterial. The relevant factor is not whether Saari actually negotiated the specific terms of the Agreement with Defendants, but whether Saari had the opportunity to do so. The undisputed facts show that the parties negotiated a settlement and that the terms of the resulting Agreement required Saari to agree that he "received all wages and compensation owed to [him]" and that he was "not eligible for any other payments or benefits by virtue of your employment . . . except for those expressly described in this Agreement," and that he signed the Agreement with an acknowledgement that he "underst[ood] and agree[d] to all the terms[.]" On this basis, the court concludes that the sixth factor weighs also in favor of upholding the Agreement because Saari had the opportunity to negotiate payment of the wages owed to him, including overtime, yet failed to avail himself of this opportunity.

      Finally, Saari presents evidence regarding expenses owed to him in an effort to challenge the seventh factor. Saari affirms that he "spent approximately $15,000.00 on travel and work-related expenses that were to be reimbursed back to me"; he was "reimbursed approximately $9,000.00; and that "$6,000.00 [was] still owed [him]" (Pl.'s Ex. 1, at 5).[2] Saari also alleges that overtime wages were owed to him, but he did not provide any evidence regarding the amount. The undisputed facts show that as part of the Agreement, Defendants made a payment of $5,027.59 to Saari in exchange for releasing all claims against them and that he cashed the settlement check. Based on these facts, the consideration given to Saari in exchange for the release did not exceed the benefits he was entitled to. However, considering the totality of the circumstances, the court concludes that Saari nonetheless received fair consideration for

---

[2] As noted by Defendants, Saari's opposition memorandum at times references the amount owed to him as being $7,000.00 (ECF 32, at 4). The court disregards this figure as no evidence has been provided to support this amount. The court will rely solely on the $6,000.00 figure attested to by Saari in his Affidavit (ECF 32-1, at 5).

releasing his claims and that the remaining six factors outweigh this single factor. In sum, the Agreement is binding against Saari, and Defendants have thus shown that Saari's claim for overtime wages is barred as a matter of law.

### B. The Agreement did not require court approval.

Saari argues that he did not release his claim for overtime wages because courts have required judicial approval for FLSA settlements (ECF 32 at 6). In support of this argument, Saari relies primarily on caselaw from other circuit courts. *See, e.g.*, *Lynn's Food Store Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2nd Cir. 2015). Notably, "the FLSA itself does not require court approval for all FLSA settlements." *Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-cv-00019 WJ/SCY, 2020 WL 3085921, at *1 (D.N.M. June 10, 2020). Moreover, "there are no discussions in any Supreme Court interpretations of the FLSA on whether a settlement or dismissal of an action to vindicate FLSA rights under 29 U.S.C. § 216(b) is conditioned on court approval[,] . . . and the Tenth Circuit Court of Appeals has not yet settled this issue." *Id.*

In this district, cases involving judicial approval of FLSA settlements largely addressed class action settlements, consistent with this court's holding that "[c]ollective action settlements under the FLSA must be approved by the district court." *See, e.g.*, *Campbell v. C.R. England, Inc.*, No. 2:13-cv-00262, 2015 WL 5773709, at *2 (D. Utah. Sept. 30, 2015); *Cazeau v. TPUSA, Inc.*, 2:18-cv-00321-RJS-CMR, 2021 WL 1688540 (D. Utah. Apr. 29, 2021); *Brueningsen v. Resort Express Inc.*, 2:12-cv-843-DN, 2016 WL 10537003 (D. Utah May 23, 2016). The only case involving approval of an FLSA settlement of an individual plaintiff's claims relied on prior authority showing that this approach was "endorsed by a majority of courts." *See Keel v. O'Reilly Auto Enterprises, LLC*, 2:17-cv-667, 2018 WL 10509413, at *2 (D. Utah May 31,

2018). Since then, circuit courts and district courts in the Tenth Circuit have split "on the issue of whether private settlements of bona fide disputes between employers and employees are valid under the FLSA without court or Department of Labor (DOL) approval," and the majority of district courts "have held that such approval is *not* necessary." *Id.* at *1–3 (emphasis added) (citing *Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019) (collecting cases); *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *7 (D.N.M. Dec. 10, 2019) (same)). Moreover, this court has expressly rejected initiating a civil action for the sole purpose of requesting court approval of a private, out-of-court settlement of an individual's FLSA claims like the Agreement at issue here. *See Chappell v. Copper View Animal Hospital*, No. 1:17-mc-52, 2017 WL 5172392, at *1 (D. Utah May 26, 2017) (noting that the parties failed to provide authority that "confers jurisdiction over a stipulation to approve a private, out-of-court FLSA settlement without the parties first commencing a traditional civil action").

In light of the split authority on this issue, the court declines Saari's invitation to rely on the decisions of other circuits and instead relies on persuasive authority from recent district court decisions in this circuit holding that "absent exceptional circumstances, the court need not review and provide approval for FLSA settlements." *Hawthorn*, 2020 WL 3085921, at *2 (citing *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-NYW, 2018 WL 6056428, at *3 (D. Colo. Nov. 19, 2019)). Examples of such circumstances include "evidence of malfeasance or overreaching in obtaining a settlement agreement." *Id.* (quoting *Fails*, 2018 WL 6056428, at *3). Here, the court finds that based on the evidence presented, there are no exceptional circumstances that would warrant judicial review or approval of the Agreement. The undisputed facts show that after Saari alleged he was not reimbursed for certain expenses, the parties

negotiated a settlement and executed the Agreement whereby Defendants made a payment of $5,027.59 to Saari in exchange for a release of all claims. Under these facts, the court finds no evidence of malfeasance or overreaching by Defendants. Accordingly, judicial approval of the Agreement was not required for Saari to release his claims under the FLSA.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Saari has failed to show a genuine dispute of material fact as to the enforceability of the Agreement, and his claim for overtime wages is barred under the Agreement as a matter of law. Accordingly, the court hereby GRANTS Defendants' Motion and DISMISSES Saari's claim with prejudice.

IT IS SO ORDERED.

DATED this 17 September 2021.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah